Nathan Dale CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–02–00955–CV, 14–02–00956–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 31, 2003.

James M. Leitner, Houston, for appellant.

Kevin P. Keating, Houston, for appellee.

Panel consists of Chief Justice BRISTER, Justice FOWLER and Senior

Chief Justice MURPHY.*

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

This is an appeal from an order submitting Nathan Dale Campbell (appellant) to the care of Kerrville State Hospital for extended mental health services.[1] For five years, appellant has been a patient of a state mental hospital as a result of a violent crime he committed but was acquitted of by reason of insanity. This appeal raises interesting and important issues for patients like appellant who are ordered to a mental health institution after having committed a violent crime. Appellant has filed two briefs with us, both raising significant legal issues. Part of the appeal complains that he was improperly harmed because the jury heard the details of the brutal crime he committed while insane, and that those details would distract the jury from the narrow issue before them: Did his *present* condition warrant continued commitment? A second part of his brief complains about numerous extraneous offenses discussed in his medical history that were made known to the jury without any separate proof that they actually occurred. The other main complaint relates to the charge, and raises the equally important question whether a judge in this type of case can order a patient to an extended stay in a mental health institution without a jury finding supporting the order.

Specifically, appellant complains of the following in his original brief: (1) telling the jury the details of the crime he committed while insane; (2) introducing extraneous criminal offenses without affording appellant notice of, discovery on, or an opportunity to defend against, the alleged offenses; (3) letting the State relitigate the extraneous offenses when they were barred by collateral estoppel; (4) telling the jury it would decide if appellant would be ordered to extended inpatient or outpatient treatment; and (5) not allowing the jury to answer the questions on both inpatient and outpatient treatment. In a supplemental brief, appellant argues that the evidence was legally insufficient to support the jury's verdict because the State was required to, but did not, prove he had served at least sixty consecutive days in a mental hospital under a valid court order. As we explain below, we overrule all of appellant's issues and we affirm.

### A. FACTS

In April 1997, at the close of a bench trial before the 180th District Court, the trial court found appellant "not guilty by reason of insanity" of the offenses of aggravated assault and aggravated kidnapping of his former girlfriend. Pursuant to section 46.03 of the Texas Code of Criminal Procedure, appellant was automatically committed to a mental health facility for twelve months. Appellant, diagnosed with bipolar disorder, has been in a psychiatric facility since that time. Each year, in May, the trial court has reviewed the commitment in a jury trial, and continued it. Appellant has appealed his recommitment three previous times. *See Campbell v. State*, 2000 WL 675142 (Tex.App.-Houston [14th Dist.] May 25, 2000, pet. denied) (not designated for publication); *Campbell v.*

---

* Senior Chief Justice Paul C. Murphy, sitting by assignment.

1. Before this opinion issued, the trial court held its annual review of Campbell's commitment and, based on his behavior and assessments from May 2002 to May 2003, decided to order Campbell to outpatient treatment.

As a result, we asked the parties if the issues in this appeal were moot. Both parties relied on an earlier opinion involving Campbell to argue that the issue was not moot. *See Campbell v. State*, 68 S.W.3d 747, 752–54 (Tex. App.-Houston [14th Dist.] 2001), *aff'd*, 85 S.W.3d 176 (Tex.2002). We agree.

*State*, 68 S.W.3d 747 (Tex.App.-Houston [14th Dist.] 2001), *aff'd*, 85 S.W.3d 176 (Tex.2002); *Campbell v. State*, 2002 WL 534131 (Tex.App.-Houston [14th Dist.] April 11, 2002, no pet.) (motion to publish granted).

In May of 2002, a jury found that appellant was mentally ill and that, as a result of his mental illness, he was suffering severe and abnormal mental, emotional, or physical distress, and his mental and physical ability to function independently had substantially deteriorated. The jury also found appellant incapable of making a rational decision regarding treatment, and found that his condition was expected to continue for more than ninety days. The jury refused to find that appellant was likely to cause serious harm to himself or others. On May 31, 2002, the trial court ordered appellant committed to extended inpatient mental health services twelve months. This appeal followed.

## B. DISCUSSION OF EVIDENTIARY ISSUES

### 1. Admission of Details of Original 1996 Aggravated Assault and Aggravated Kidnapping.

Appellant first claims that the details of the 1996 aggravated assault and aggravated kidnapping of his girlfriend should be inadmissible in the annual recommitment hearings. He gives four reasons for this: it violates (1) double jeopardy and (2) collateral estoppel, and is (3) irrelevant and (4) unfairly prejudicial. We disagree on all issues.

#### a. Double jeopardy.

■ Each year at Appellant's recommitment hearing, the State has introduced evidence of the original 1996 aggravated kidnapping and assault. Appellant claims that this continual rehashing of the gruesome details of his 1996 offenses amounts

to successive prosecutions, thus violating his right to be free from double jeopardy.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This fundamental doctrine has been interpreted to prevent (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Bailey v. State*, 87 S.W.3d 122, 126 (Tex.Crim.App.2002). However, the doctrine is not implicated in this case because, as we explain below, the State is not repeatedly prosecuting appellant or seeking to impose a punishment on him.

The lynchpin to our decision is our conclusion that recommitment hearings, and the judgment following the hearings, are neither a criminal prosecution nor a punishment. To begin with, a commitment under Article 46.03 is a civil matter. *See Campbell v. State*, 85 S.W.3d 176, 180 (Tex.2002). Each year, the trial court conducts a hearing to determine whether appellant "continues to meet the criteria for involuntary commitment." TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(5) (Vernon Supp.2002). The court can only recommit appellant if it finds that he meets one of the criteria for commitment specified in Mental Health Code section 574.035. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035 (Vernon Supp.2002). These criteria relate to appellant's *present* dangerousness both to himself and others and to appellant's *present* mental condition. *See id.* The criteria do not require the jury to revisit the original crime to decide one more time if appellant should be committed because of his prior violent acts. When the jury revisits his original crimes, the crimes are

used as additional background information to assess appellant's improvement; we explain this point in more detail below under his other issues. Thus, a recommitment order is based on factors that measure the patient's current—as opposed to past—mental condition, not on an additional adjudication of the original offense. And, as stated earlier, the proceeding is civil. *Campbell v. State*, 85 S.W.3d at 180.

But the civil nature of the proceeding can be overcome by a showing that the involuntary commitment is punitive or retaliatory in nature. Appellant has not shown this. While the patient is physically restrained, historically these commitments have been treated as civil, rather than punitive, in nature. *See Beasley v. Molett*, 95 S.W.3d 590, 607 (Tex.App.-Beaumont 2002, pet. stricken) (finding commitment under Texas Civil Commitment of Sexually Violent Predators Act not punitive). Through Article 46.03, our legislature chose to have mentally-ill persons treated at a psychiatric facility to reduce their dangerousness and to improve their mental condition. *See Jones v. United States*, 463 U.S. 354, 368, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) ("The purpose of commitment following an insanity acquittal ... is to treat the individual's mental illness and protect him and society from his potential dangerousness."). Appellant has failed to demonstrate that we should ignore precedent, legislative history, and reality, and hold that this legislative scheme is actually punitive or retaliatory. *See Campbell*, 85 S.W.3d at 180; *Beasley*, 95 S.W.3d at 607.

Additionally, the recurring nature of the hearing and the annual reference to the original assault and kidnapping do not transform the hearing from a civil one to a punitive or retaliatory one. As we mentioned above and explain more specifically under one of appellant's later issues, the original assault and kidnapping, as well as all of appellant's prior history, provide a benchmark to gauge his behavioral, emotional, and psychological progress or decline. It is this historical psychological benchmark that provides a basis for his psychologists and psychiatrists to assess current behavior—has the patient improved or is he merely repeating past behavior? For example, every one of the doctors reviewing appellant started with a history of his behavior. Not one of them looked at current behavior or to the future without first looking backward—to his emotional and psychological past.

While we agree that review of appellant's brutal crime potentially prejudices the jury to some degree, and that it must not unduly prejudice the jury against him, it does not amount to double jeopardy.

**b. Collateral estoppel.**

■■■ We turn next to appellant's claim that collateral estoppel bars the repeated introduction of the details of his 1996 offenses. Like double jeopardy, the doctrine of collateral estoppel is embodied within the constitutional right not to be placed in jeopardy more than once for the same crime. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *State v. Sauceda*, 980 S.W.2d 642, 645 (Tex.Crim.App.1998). Under this doctrine, " 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Sauceda*, 980 S.W.2d at 645 (quoting *Ashe*, 397 U.S. at 443, 90 S.Ct. 1189). To determine whether collateral estoppel bars part or all of a subsequent prosecution, courts employ a two-step analysis in which they ask the following: (1) what facts were "necessarily decided" in the first proceeding; and (2) do those "necessarily decided" facts constitute essential elements of the offense in the sec-

ond trial. *See Ex parte Taylor,* 101 S.W.3d 434, 440 (Tex.Crim.App.2002) (en banc). The entire trial record must be examined to determine precisely what fact, or combination of facts, the jury necessarily decided. *See id.* at 441.

Appellant does not identify the specific fact or facts he believes the State is attempting to relitigate, and he does not explain how any facts constitute essential elements of the "offense in the second trial." Appellant also has offered no authority that collateral estoppel applies to subsequent recommitment hearings to bar the details of the patient's original crime. We decline to hold that collateral estoppel applies here.

### c. Relevance.

 Next, appellant contends that his actions, while criminally insane, are not relevant to the findings required under section 574.035 of the Mental Health Code, and that their admission is unfairly prejudicial. *See* TEX.R. EVID. 402, 403. He argues that throughout the hearing the State purposefully emphasized the brutal nature of his crimes to inflame the jury against him and to assure his return to inpatient, rather than outpatient, treatment. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). But, before we consider if appellant's criminal acts are relevant to the recommitment hearing, we think it important to revisit what the State must prove to support recommitment.

Section 574.035(a) provides that a judge may order a proposed patient to receive court-ordered extended inpatient mental health services if the jury finds clear and convincing evidence of the following:

(1) the proposed patient is mentally ill;

(2) as a result of that mental illness the proposed patient:

 (A) is likely to cause serious harm to himself;

 (B) is likely to cause serious harm to others; or

 (C) is:

 (i) suffering severe and abnormal mental, emotional, or physical distress;

 (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

 (iii) unable to make a rational and informed decision as to whether or not to submit to treatment;

(3) the proposed patient's condition is expected to continue for more than 90 days; and

(4) the proposed patient has received court-ordered inpatient mental health services under this subtitle or under Article 46.02, Code of Criminal Procedure, for at least 60 consecutive days during the preceding 12 months.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a).[2]

To be clear and convincing under subsection (a), the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or

---

2. The jury is not required to make the finding under subsection (a)(4) if the proposed patient has already been subject to an order for extended mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(d).

others, or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. *See* Tex. Health & Safety Code Ann. § 574.035(c). Evidence is relevant if it has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. We disagree with appellant that his prior violent acts are not relevant to the jury's assessment of the section 574.035 factors.

■ The state of an individual's emotional and psychological well-being—or lack thereof—and whether the person should remain committed because of a mental illness, requires more than a snapshot of a single year in a person's life; it is a broad inquiry. In an involuntary commitment case, we ask whether the person is mentally ill and needs help (1) to protect himself or others or (2) to maintain his health. Especially when a person was criminally violent while insane and has been committed for years, focusing *only* on the most recent years of life provides no frame of reference. To determine if one who has been mentally ill is now well, or at least able to protect others and maintain his health, a psychological history is necessary.

As we noted earlier, the original assault and kidnapping provide a benchmark by which experts—and therefore the jury—can measure appellant's emotional and psychological progress. Without first looking at appellant's psychological histo-

ry, the experts cannot fully assess his current psychological status. According to at least one expert, appellant's prior violent acts reflect how he can react to his illness—bipolar disorder—when he is not using various tools, such as medication and counseling, to control the illness. And, according to testimony, the details of the crime allow the doctors and the jury to assess whether appellant was adequately processing the event and has accepted responsibility for it. Without some reference to the details of the crime, and which of them appellant still was denying, it would be difficult for the doctors to discuss adequately whether appellant improved over the year. Otherwise, the jury would have to rely on the doctor's testimony that appellant denied certain aspects of the crime. Moreover, the crime apparently indicates the extent to which appellant can be a danger to others if he does not control his mental illness. Every psychological evaluation introduced into evidence contained a summary of appellant's 1996 offenses and the fact that he had, at a minimum, assaulted his girlfriend and attempted to pull her eyes out of their sockets. Even the psychological assessment offered by appellant indicated that he had "assaulted his girlfriend in July 1996 and attempted to remove her eyes." [3]

At trial, some experts testified that appellant continued to deny important particulars of his crime; for example, appellant has denied that he committed the crime with a knife. To some experts, this was important.[4]

---

3. The evaluation also included the following details in a separate section:

> Mr. Campbell stated that he was in a relationship with his girlfriend for about one and a half years. According to Mr. Campbell, the day of the assault, he heard his father's next door neighbor's voice telling him to kill his girlfriend. Mr. Campbell stated that he remembers choking her, be-

cause it was really a demon he was killing. Mr. Campbell stated that as her face turned blue, her eyes began to bulge, which he thought was the location of the demon, so he attempted to gouge out her eyes.

4. Appellant disputes the proposition that, if he denies the particulars of the crime, he has not improved. To support this argument, he points to at least one expert's testimony that a

We find this evidence relevant to the jury's sole function at the trial, which was to decide if appellant was mentally ill and met the criteria for court-ordered extended mental health services.

### d. Inadmissible because unfairly prejudicial?

 Having determined the evidence was relevant, we must now consider whether it should be excluded because it was unfairly prejudicial. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tex.R. Evid. 403. When a party objects under Rule 403, a trial court must conduct a balancing test, weighing the danger of prejudice against the probative value of the evidence. *Waldrep v. Tex. Employers Ins. Ass'n*, 21 S.W.3d 692, 703 (Tex.App.-Austin 2000, pet. denied). In doing so, we must review the entire record. *See Alvarado*, 897 S.W.2d at 754. To obtain a reversal because of admitted evidence, the appellant must demonstrate that the whole case turns on the particular evidence admitted. *Id.* at 753–54.

Here, appellant again complains the State emphasized the gruesome details of his offenses and repeatedly implored the jury to consider which was more important—appellant's rights or society's right to be protected from him.[5] As a conse-

quence, appellant argues, the jury was unfairly prejudiced against him and gave the State the result it wanted. We disagree.

 As a threshold matter, the State argues that appellant waived this complaint by introducing his own evidence[6] containing many of the very same details of which he now complains. *See Ethington v. State*, 819 S.W.2d 854, 858–60 (Tex. Crim.App.1991); *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex.1984). We agree. But even if appellant had not waived this complaint, he would still fail the Rule 403 balancing test. As stated earlier, all of the evidence of appellant's crime was highly relevant to the issues of his dangerousness to himself or others, his mental status, and his treatment progress. And any risk of unfair prejudice must be measured against this high degree of relevance.

To examine any prejudicial effect the evidence had on the jury, we need not look any further than the jury's response to the jury questions. Before answering these questions, the jury heard extensive expert testimony about appellant's mental state, and heard and saw written evidence detailing the crime. The jury also heard at least one psychologist testify that appellant was not a threat to himself or others while he remained in the controlled environment of Kerrville State Hospital, where he was taking his medication and being

person might not remember all that he did during a psychotic episode. However, appellant was able to cross-examine the experts on this issue, so that the jury had before it the reasons in support of, and the reasons against, this theory. It was their responsibility to weigh the testimony and reach a decision.

5. Appellant's objections to the State's argument that the jury should weigh appellant's rights against society's right to protection were frequently sustained in whole or in part. Near the conclusion of the proceeding, appel-

lant's counsel requested a mistrial, but the court denied it.

6. As noted in the previous section, appellant introduced a document containing virtually all the details of which he now complains— with the exception of the fact that a knife was used in the assault. The State argues, and we agree, that the inflammatory potential of *the fact that a knife was used* is relatively minimal compared to the graphic nature of the crime itself.

carefully monitored. However, that same psychologist doubted whether appellant would continue to improve if he were placed in an outpatient treatment program, because too many outside variables would create tension and uncertainty that would probably cause appellant's mental state to deteriorate.

■ The jury's response to this testimony, and *all* the evidence, clearly shows that it was not unfairly prejudiced against the defendant. Unfair prejudice means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim. App.1990) (quoting *United States v. Jamil,* 707 F.2d 638, 644–645 (2nd Cir.1983)); FED.R.EVID. 403 advisory committee's note. Here, however, it is apparent that the jury was able to render a verdict based upon expert testimony and by considering all of the circumstances of appellant's mental health. The jury's answers to the special issues—especially its conclusion that appellant was not a danger to himself or others—reflects a jury that listened to all of the testimony and responded in a reasonable manner consistent with that testimony. It is exactly this objectivity that refutes the claim that the jury was inflamed and that it rendered a verdict on an improper basis.

Given the high degree of relevance, as well as little evidence of prejudicial effect, appellant has failed to show that the probative value of the details was substantially outweighed by any prejudicial effect.

In short, we conclude that none of appellant's complaints—double jeopardy, collateral estoppel, relevance, and unfair prejudice—are reason to exclude evidence of appellant's crimes in July of 1996. We overrule appellant's first issue.

## 2. Admission of Extraneous Offenses.

■ In his second issue, appellant contends the trial court erred by improperly allowing the State to "show allegations of many extraneous criminal offenses allegedly having been committed by appellant without the necessity of proving the same by any legal standard" and denying appellant "notice of said extraneous offenses or the ability to defend against the same either before or during trial by denying all efforts at discovery." Appellant's arguments in this section are somewhat disjointed and difficult to follow; however, we will address his arguments as we understand them.

■ Appellant primarily argues that he was deprived of a fair trial because he was unable to prepare for, or defend against, the introduction of extraneous acts or offenses reflected in his medical records.[7] Most of appellant's complaints are

---

7. Appellant also argues, in a conclusory fashion, that the introduction of background information that may relate to his personality disorder is confusing and prejudicial, and is not relevant to the issue of whether he is currently mentally ill. Appellant argues that he may not be committed because he has a personality disorder that makes him dangerous, citing *Foucha v. Louisiana,* 504 U.S. 71, 77, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (holding Louisiana statute violated due process because it allowed insanity acquittee to be committed to a mental institution until he was able to demonstrate he was not danger-

ous to himself and others, even though he did not suffer from any mental illness). He also contends that all the testifying doctors stated that appellant's mental illness was in remission. By this argument, appellant appears to suggest that the jury's findings were based on the existence of a personality disorder rather than a mental illness. But appellant does not support this argument with citations to the record or appropriate legal analysis, and he does not contend that the evidence was legally or factually insufficient to support the jury's

directed to State's Exhibit 25, a 2002 psychiatric assessment prepared by Dr. Suire, and testimony relating to it. Dr. Suire's assessment included the following in a summary of appellant's background:

> Mr. Campbell has one prior arrest, for drug possession at age 15. Records indicate this arrest resulted in he and his mother being ordered to attend substance abuse education. File information also indicates a pattern of antisocial behavior that did not lead to arrest, including theft, drunk driving, and drug trafficking.

Dr. Suire's assessment also included a reference to an incident in which a Ms. Brubaker observed appellant standing near a group of patients who were smoking in violation of hospital policy, and concluded that appellant "appeared to be serving as a lookout for these patients." Appellant also complains about the admission of his own testimony, elicited by the State, regarding his past substance abuse and sexual activity with women while confined in a psychiatric facility.[8]

Appellant complains that the trial court and the State either denied or ignored his discovery requests. And, as a result, he was unable to investigate and defend against these alleged extraneous acts.[9] For example, appellant contends that the State should have been required to put on evidence to prove that he was arrested at age 15 for drug possession, and that he should have been given notice of this specific allegation and an opportunity to disprove it through discovery. Appellant does not raise specific evidentiary complaints about the admitted evidence, but argues broadly that the State was allowed to portray him as "a drug trafficker, a drunk driver, a drug possessor, and conspirator in other crimes, [and] a criminal thinker" without being required to prove the allegations by some legal standard; he claims this deprived him of due process. However, he provides no authority, nor are we aware of any, to support his assertion that historical or background information drawn from medical records is admissible only when proven by some legal standard. Even if we were to assume the trial court erred in admitting the referenced evidence, appellant has not demonstrated that the errors were of such magnitude that he was denied a fair hearing or that they probably caused the court to render an improper judgment. *See* Tex.R.App. P. 44.1(a).[10]

---

findings. Therefore, to the extent appellant is making such an argument, it is waived.

8. Although appellant complains that he objected to the admission of four of the psychological assessments introduced by the State, and contends that "these documents were then offered and testified to in front of the jury on many occasions," he does not identify any other specific extraneous acts contained in the assessments and provides no citations to any supporting testimony. Therefore, appellant has waived any complaint as to other unidentified extraneous acts or testimony regarding them.

9. Appellant's discovery requests included two requests to depose witnesses, a request to obtain the notice and disclosures provided in Mental Health Code sections 574.006 and 574.007, a general motion for discovery, a notice for disclosures under Texas Rules of Evidence 404 and 609, and a request for *Brady* materials. Appellant does not argue that the trial court erred in denying any specific discovery requests, and does not identify what information he contends he wanted to obtain or how it was relevant or material.

10. We further note that the extraneous acts of which he complains were presented in the context of appellant's treatment and mental health assessments; they were not introduced for the purpose of convicting appellant of charges or enhancing a sentence upon conviction. Given the relevance of the information to the jury's determination of appellant's mental condition, the trial court could have determined that admission of the psychologi-

We overrule appellant's second issue.

### 3. Extraneous Offenses and Collateral Estoppel.

■ In his third issue, appellant contends that collateral estoppel bars evidence of extraneous offenses. Appellant argues, as he did in his first two issues, that his present mental condition should be the only basis of his evaluation each and every year. He contends that requiring him to relitigate his past acts violates the principles of collateral estoppel. However, as in his first issue, appellant wholly fails to apply the doctrine of collateral estoppel to the facts of his case. He does not identify specific extraneous acts necessarily decided in earlier proceedings, he does not show that those acts constitute essential elements of the jury's findings, and he does not provide a record of any prior proceedings from which we could determine what fact or facts were foreclosed from the jury's consideration. *See Ex parte Taylor,*

101 S.W.3d at 440–441. Therefore, we overrule this issue.

### C. DISCUSSION OF CHARGE ISSUES

#### 1. Informing the Jury of the Effect of its Answers.

■ We turn now to appellant's charge issues. In his fourth issue, he contends that the jury should not have been told that it was deciding whether appellant would be ordered to inpatient or outpatient treatment. He claims that this error was made worse because the jury also knew which question in the charge related to which type of treatment.

The special issues in the charge contained a question on inpatient treatment (section 574.035(a)), and on outpatient treatment (section 574.035(b)), and the prosecutor explained to the jury that one question related to inpatient treatment and the other to outpatient treatment.[11] Con-

---

cal assessments would not deprive appellant of a fair opportunity to contest the evidence or testimony.

11. Under section 574.035(b), the judge may order a proposed patient to receive court-ordered extended outpatient mental health services only if:

(1) the judge finds that appropriate mental health services are available to the patient; and
(2) the jury, or the judge if the right to a jury is waived, finds from clear and convincing evidence that:
(A) the proposed patient is mentally ill;
(B) the nature of the mental illness is severe and persistent;
(C) as a result of the mental illness, the proposed patient will, if not treated, continue to:
　(i) suffer severe and abnormal mental, emotional, or physical distress; and
　(ii) experience deterioration of the ability to function independently to the extent that the proposed patient will be unable to live safely in the community without court-ordered outpatient mental health services;

(D) the proposed patient has an inability to participate in outpatient treatment services effectively and voluntarily, demonstrated by:
　(i) any of the proposed patient's actions occurring within the two-year period which immediately precedes the hearing; or
　(ii) specific characteristics of the proposed patient's clinical condition that make impossible a rational and informed decision whether to submit to voluntary outpatient treatment;
(E) the proposed patient's condition is expected to continue for more than 90 days; and
(F) the proposed patient has received court-ordered inpatient mental health services under this subtitle or under Section 5, Article 46.02, Code of Criminal Procedure, for at least 60 consecutive days during the preceding 12 months.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(b) (Vernon Supp.2002). The jury or judge is not required to make the finding under subsection (b)(2)(F) if the proposed patient has already been subject to an order for extended mental health services. *Id.* § 574.035(c).

sequently, the jury knew which special issue inquired about inpatient treatment and which inquired about outpatient treatment. Appellant claims this was reversible error. In support of his argument, appellant cites to Mental Health Code section 574.032(f), which states in part that "[t]he jury may not make a finding about the type of services to be provided to the proposed patient." TEX. HEALTH & SAFETY CODE ANN. § 574.032(f) (Vernon Supp.2002).[12]

Appellant did, however, himself introduce the statutory provisions in a separate document, even though he had consistently claimed the jury should not know the effects of its answers. The record does not reveal why appellant's attorney introduced this document into evidence; he gave no reason at the time. As he objected throughout trial, we are reluctant to say that he waived the issue by introducing one document. However, it was introduced and it was available to the jury in the deliberation room, and it did tell the jury which special issue was for outpatient and which was for inpatient treatment. For this reason, we conclude that he waived any potential error on this issue.

We overrule appellant's fourth issue.

### 2. Conditioning the Answer to Outpatient Treatment on a Positive Response to the Inpatient Treatment

In appellant's fifth issue, he argues the trial court should have let the jury answer the questions on both outpatient (section 574.035(b)) and inpatient (section 574.035(a)) treatment. The court did not do this. Instead, the jury was instructed to answer the question on outpatient treatment only if it found that appellant did not meet the requirements for inpatient treat-

ment. Appellant claims that he had a right to have the jury answer both the inpatient and outpatient jury questions; he claims the judge could order outpatient treatment only if the jury made findings on this issue. As support for his argument, appellant relies on several sections of the Mental Health Code.

In response, the State claims the jury did not have to consider both inpatient and outpatient treatment for the trial court to order one or the other. According to the State, the judge had the discretion to order outpatient treatment even if the jury did not answer a question on outpatient treatment. The State relies solely on article 46.03.

As presented by appellant, this issue really has two parts. First, in a jury trial, can the trial court order either inpatient or outpatient treatment without a jury finding? Second, was it error for the trial court to limit her options and not obtain a jury finding on outpatient treatment?

### a. In a jury trial, can the judge order either type of treatment without a jury finding?

We first consider whether, after a jury trial, the trial court could order a treatment without a jury finding on that type of treatment. The Texas Supreme Court's 2002 *Campbell* opinion guides our inquiry. There, the question was whether the trial judge could hold a hearing if it did not have two medical certificates on file stating that Campbell should remain in inpatient care. The Mental Health Code provides that two certificates are needed; article 46.03 states that a trial judge can hold a hearing on its own motion. The Supreme

---

**12.** Appellant also cites *Shannon v. United States*, 512 U.S. 573, 579, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994), in which the United States Supreme Court discussed the well-established principle that juries are not to consider the consequences of their verdicts. The State responds that appellant has waived the issue because he introduced a document noting which provision related to inpatient and which related to outpatient treatment.

Court began by discussing the relationship between article 46.03 and the Mental Health Code. The Court first pointed out that "the proceedings described in article 46.03 section 4(d)(5) determine whether a person should be released from involuntary commitment." *Campbell,* 85 S.W.3d at 181. "They apply to a person who has been found not guilty by reason of insanity in the trial of a criminal offense and the court determines that the [person] committed an act, attempt or threat of serious bodily injury to another person." *Id.* The Court noted that Campbell met those criteria, and that article 46.03 applied to his case.

However, the Court also explained that article 46.03, section 4(d)(5) was not the only provision a court must look to when it holds a hearing to determine whether to release or recommit a person acquitted under article 46.03 of inflicting serious bodily injury on another person. The Court emphasized that article 46.03, section 4(d)(5) provides that a hearing under the section must be conducted pursuant to the Mental Health Code's provisions. *Id.* As the Mental Health Code is very broad and contains provisions that would not apply to an article 46.03, section 4(d)(5) hearing, the Court held that "only those Mental Health Code provisions pertinent to an article 46.03 section 4(d)(5) proceeding apply." *Id.* at 182. Ultimately, the Court concluded that "a hearing held under article 46.03 section 4(d)(5) must comply with those Mental Health Code provisions pertinent to *conducting* commitment hearings." *Id.* at 183 (emphasis in original).

 Here, then, the question is which Mental Health Code provisions are pertinent to conducting commitment hearings. The parties generally agree that three sections of the Mental Health Code are pertinent: section 574.032, entitled "Right to Jury"; section 574.035, entitled "Order for Extended Mental Health Services"; and 574.036, entitled "Order of Care or Commitment." We agree and, when we look at these sections, we find that each one contains very clear and specific directions that an order for either inpatient or outpatient commitment must be supported by jury findings.

Section 574.032 states that a hearing for extended mental health services—the type of hearing held here—"must be before a jury," unless that right is waived. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.032(b). This section also provides, "In a hearing before a jury, the jury shall determine if the proposed patient is mentally ill and meets the criteria for court-ordered mental health services." *Id.* at 574.032(f).

Section 574.035 contains the criteria that must be met before an individual is ordered to extended inpatient or extended outpatient mental health services. Before a judge may order a proposed patient to receive either of these types of mental health services, the jury must find that the proposed patient meets the criteria for inpatient and/or outpatient mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035.

Finally, section 574.036 details what must happen after the judge dismisses the jury, and before the judge may enter an order committing the individual to either inpatient or outpatient mental health services. The judge may hear additional evidence as to "alternative settings for care," but before the judge can enter an order committing the individual to inpatient or outpatient treatment, the jury—the "trier of fact" as the section refers to it—must find that the individual meets the criteria for that type of extended mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.036.

Thus, in three separate provisions pertinent to conducting an article 46.03, section 4(d)(5) hearing, the Mental Health Code provides for the *jury*, not the judge, to decide if the patient meets the criteria for extended mental health services. And in two separate sections, the Code provides that the jury must make this finding before the court can order extended inpatient or outpatient mental health services.

As such, each of these sections of the Mental Health Code directs how the court should conduct the hearing. First, the court must conduct the hearing with a jury, unless one is waived, and second, the jury must enter findings that the inpatient and/or outpatient treatment criteria have been met.

In spite of the language in these sections, the State claims article 46.03 of the Code of Criminal Procedure authorizes the court to order inpatient or outpatient treatment as long as the jury has made a positive finding for *inpatient* treatment.[13] The three relevant Mental Health Code sections do not support this argument. Consequently, we agree with appellant that the appropriate reading of article 46.03 and the Mental Health Code is this: once the jury has found that a patient meets the criteria for inpatient and outpatient treatment, the judge has the discretion to choose between the two, or, if the jury has made a finding of one of the two, the judge may order that treatment.

Thus, we also agree with appellant's claim that the trial judge, by conditioning the jury question on outpatient treatment, ran the risk of limiting her options. We do not agree, however, that this was error.

### b. Did the trial court commit reversible error by limiting her options?

■ Here, the trial court did potentially limit itself only to inpatient treatment; the jury was told not to consider the outpatient question if it answered the inpatient treatment question positively. But this does not mean the charge was flawed. We think appellant's argument relies on a faulty assumption—that the judge has no input into the contents of the charge and has no discretion at the submission of the charge to limit her options. To the contrary, the submission of the charge is the trial court's responsibility. *Spencer v. Eagle Star Ins. Co. of America,* 876 S.W.2d 154, 158 (Tex.1994). If the court has the discretion to choose between either inpatient or outpatient treatment after the jury has answered both positively, the court must also have the discretion before submitting the charge to decide that it (1) will order only inpatient treatment if the jury answers that question affirmatively and (2) will not consider outpatient treatment if the jury finds that inpatient treatment is appropriate. By conditioning the question, that is, in essence, what the trial judge did here. After she had heard all the evidence, but before submitting the charge, she apparently decided that inpatient treatment was the more advisable treatment. The result is the same as if the jury answered both questions positively; the judge apparently would have chosen inpatient treatment rather than outpatient treatment.

We are unwilling to say that the trial judge unwittingly limited herself only to inpatient treatment. At the charge con-

---

**13.** The State relies on language providing that the court shall order inpatient treatment if it determines that the acquitted person continues to meet the criteria for inpatient treatment, and that outpatient treatment is inappropriate. The State seems to concede that some sort of finding by the jury is necessary, because it does not argue that the court could order either inpatient or outpatient treatment without a jury finding, even though the article does not contain language requiring a jury finding.

ference, appellant argued very clearly that the judge could not order outpatient treatment if the jury did not enter a positive finding to that question. By choosing to condition the question, the judge exercised her discretion before submission rather than afterward. Had she wanted to keep that option open, she could have. She chose not to, and that was within her discretion. This is both logical and efficient. If the trial judge knew she preferred inpatient treatment, it would be unnecessary and wasteful requiring the jury to consider both options.

In summary, we agree with appellant that the judge cannot order inpatient or outpatient treatment unless the jury first enters a positive finding to those issues. But, here, even though the trial judge did ultimately limit her options, she committed no error in the submission of the charge.

We overrule appellant's fifth issue.

### 3. The Reversal and Remand of the 2001 Commitment Order.

██ In two supplemental issues on appeal, appellant argues that he should be released because this Court reversed the 2001 Commitment Order.

Appellant bases his argument on three sections contained in the Health & Safety Code. Two of the sections—574.035(a)(4) and 574.035(b)(2)(F), which pertain to court-ordered inpatient and outpatient mental health services—require the judge or jury to find from clear and convincing evidence that the defendant has received court-ordered patient services for at least 60 consecutive days during the preceding twelve months. The third section states that the jury or judge need not make the finding required by these two sections if the defendant has already been subject to an order for extended mental health services. *See* Tex. Health & Safety Code Ann. § 574.035(b)(2)(F). Thus, the first two sections require a finding by the factfinder that the person has received court-ordered mental health services; the third section does away with this requirement if the defendant has already been subject to an order for extended mental health services.

Appellant contends that when we reversed the 2001 commitment order, there was no "valid" commitment order in effect. Without a valid commitment order, the State would have to prove that appellant received court-ordered mental health services for at least 60 consecutive days during the previous year. As the State did not prove this, it did not meet its burden—according to appellant—and the order must be reversed.

Appellant also cites one of our cases in which we equated a reversal to the granting a new trial. *See Al Haj v. State,* 916 S.W.2d 660 (Tex.App.-Houston [14th Dist.] 1996), *pet. dism'd,* 932 S.W.2d 519 (Tex. Crim.App.1996). There we said the following about the effect of a reversal:

> In effect, the granting of a new trial restored appellant's case to its status before the ... trial, including arraignment or any pretrial proceedings initiated by appellant or the State.

*Id.* at 663.

Using this language as a springboard, he argues that a reversal here would put the case in the position it was in before the 2001 order, wiping out both the order and his subsequent stay at the hospital, as if neither happened. As a corollary, he also argues that having been reversed, the 2001 commitment order is invalid or void and that appellant should be released. We disagree with this interpretation. Instead, we think *State v. Roland,* 973 S.W.2d 665 (Tex.1998), explains what happens in this situation.

In *Roland,* the Texas Supreme Court was confronted with an individual who, like

appellant, was adjudicated not guilty of a violent crime by reason of insanity. *Id.* at 665–666. Like appellant, Roland claimed, there was a break in the chain of commitment orders because there literally was a break—a commitment order expired before the next commitment order was extended. *Id.* at 666. He claimed this break between commitment orders required his immediate release, and apparently raised the specter of due process violations if he was not released.[14] The Supreme Court disagreed.

First it noted that, although the statute is mandatory and requires the hearing on recommitment to be held before the prior order expires, "the statute does not prescribe the consequences of a failure to hold a timely hearing." *Id.* Then it pointed out that nothing in article 46.03 justifies denying the State the opportunity to prove that Roland continued to be mentally ill and dangerous—even when the statutory time for hearing has passed. *Id.* at 666–667. And finally, it discussed the legislative purpose of the section. Clearly, that purpose was for the judiciary "to be involved in the decision to terminate the commitment of a person found not guilty of a violent offense by reason of insanity." *Id.* at 667. Article 46.03, section 4(d)(5), entitled "Judicial Release," clearly requires that discharge may occur only *"by order of the committing court* in accordance with the procedures specified in this subsection." *Id.* (emphasis in original). Unquestionably, the legislature did not want a person found not guilty by reason of insanity to be released, unless the release was first reviewed by the committing court. *Id.*

The *Roland* reasoning applies here, too. If the legislature wanted a patient to be released because their order was reversed, it could have stated this. It did not. Instead, it provided that only the committing court can order the discharge of a person found not guilty by reason of insanity. And, even then, the court can order a discharge only if it follows procedures set out in article 46.03, section (4)(d)(5). Releasing a person merely because their commitment order was reversed, and not because the trial court ordered the patient dismissed, does not further the plainly stated legislative intent.

Thus, reading article 46.03 of the Texas Code of Criminal Procedure and section 574.035(a) together, it is clear that a patient may be discharged only because the trial judge affirmatively made the decision to discharge and followed certain procedures.

For these reasons, we overrule appellant's two supplemental points.[15]

## CONCLUSION

We have reviewed each of appellant's claims, and we briefly summarize our holdings here. First, by admitting the details of appellant's original crimes, the trial court has not subjected appellant to double

---

**14.** We say that he "apparently" raised these issues because it is a little unclear from the opinion. The court discussed why it would not implicate due process if he were not released, but did not say if it discussed the issue on its own or because Roland raised it.

**15.** At oral argument, counsel also argued that he is entitled to have a hearing at the end of each year he is committed. If the order for one year is reversed, he claims that the hearing for that year must be reheld before the hearing for the next year can occur. Consequently, when this Court reversed the 2001 order, he claims the trial court could not hold a hearing and enter an order in 2002 without first retrying the commitment issues for the 2001 order. This argument was not made in the trial court or in the appellate brief. As such, we do not address it in the opinion; however, we think it raises an important issue that the legislature should consider addressing.

jeopardy. Second, collateral estoppel does not apply to this case to preclude the admission of evidence about prior crimes. Third, the details of the crime were relevant to the proceeding and not unfairly prejudicial. Fourth, appellant claimed that the State had to prove any extraneous offenses contained in historical summaries by some legal standard. But, he did not cite any authority in support of this, nor did he demonstrate that any potential error in admitting the offenses probably caused the rendition of an improper judgment. Fifth, on the charge issues, appellant did not preserve any error that may have occurred when the jury was told that one special issue inquired about inpatient treatment and the other inquired about outpatient treatment. Sixth, the trial court did not err in conditioning the jury's consideration of outpatient treatment. As long as the trial court's order is supported by a jury finding, the trial court may choose between inpatient or outpatient treatment. Here, although the jury did not enter a finding on outpatient treatment, it did find that inpatient treatment was appropriate, and that finding supported the Court's order. Finally, our reversal of the 2001 order did not render it void so that the State would be required to prove his commitment for 60 days prior to the 2002 order.

For these reasons, we affirm the trial court's judgment.

BRISTER, C.J., concurring.

SCOTT BRISTER, Chief Justice, concurring.

I join in the Court's judgment and all aspects of its opinion except for part C(2). As to that part of the opinion, I agree with the Court's conclusion the trial court did not err in conditioning the outpatient treatment jury question on a negative answer to the inpatient treatment question.

But I would not decide whether the trial judge could have ordered outpatient treatment based on a jury finding supporting inpatient treatment, or what she might have done with jury findings supporting both. The trial judge here ordered inpatient treatment; I would reserve ruling on when she can order outpatient treatment until she does.

The necessary and proper form for submitting jury questions in a civil case lies within the trial judge's considerable discretion. *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997). In his very brief argument, appellant claims the submission here was error because it took away the trial judge's discretion to order outpatient treatment even if the jury made the necessary findings for inpatient treatment. In other words, the trial judge abused her discretion by taking away her discretion. For obvious reasons, he cites no cases ever adopting such an argument.

Accordingly, I concur with the Court's disposition only in part C(2), and join in the remainder of its opinion.