Andrew Sawyer WELLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–04–428 CR.

Court of Appeals of Texas,
Beaumont.

Submitted on Nov. 21, 2005.

Decided Jan. 11, 2006.

J.D. Hamm, Beaumont, for appellant.

Bruce N. Smith, Special Prosecutor, Beaumont, for state.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

This is an appeal of a commitment order extending inpatient mental health services for appellant Andrew Sawyer Weller. In a sole issue, Weller argues the evidence is legally and factually insufficient to support the trial court's determination that he poses a danger to himself and others. We affirm the order.

### Procedural Background

On January 11, 1988, Weller was found not guilty of murder by reason of insanity. *See Weller v. State*, No. 09–01–067–CR, 2002 WL 91004, at *1 (Tex.App.-Beaumont Jan.23, 2002, no pet.) (not designated for publication). Pursuant to Tex.Code Crim. Pro. Ann. art. 46.03 § 4(d),[1] (1) Weller was ordered committed to the North Texas State Hospital–Vernon Campus for treatment. *See* Weller, 2002 WL 91004, at *1.

On August 24, 2004, the State filed an application for renewal of extended court-ordered mental health services. On Sep-

---

1. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2643–47, *repealed by* Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 1, 2005 Tex. Gen. Laws 2841, 2841 (current version at Tex.Code Crim. Proc. Ann. art. 46C.001–46C–270 (Vernon Supp. 2005)). The 2005 amendment states that it "applies only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose." Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 5, 2005 Tex. Gen. Laws 2841, 2853–54.

tember 20, 2004, the trial court held a hearing to determine whether Weller continued to meet the criteria for involuntary commitment. The trial court found, by clear and convincing evidence, that Weller (1) was mentally ill, (2) was likely to cause serious harm to others, (3) would, if not treated, continue to suffer severe and abnormal mental, emotional, and physical distress, (4) would, if not treated, continue to experience deterioration of his ability to function independently, (5) was presently unable to make a rational and informed choice as to whether or not to submit to treatment, and (6) was expected to continue in this condition for more than ninety days. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (Vernon Supp.2005). Based upon these findings, the court entered a judgment committing Weller to North Texas State Hospital–Vernon Campus for in-patient treatment for a period not to exceed one year.

### Standard of Review

When reviewing the legal sufficiency of the evidence in a case where the burden of proof at trial was by clear and convincing evidence, we consider all the evidence in the light most favorable to the finding. *Harrison v. State*, 148 S.W.3d 678, 680 (Tex.App.-Beaumont 2004, no pet.). "We must assume the factfinder resolved disputed facts in favor of the finding, if a reasonable factfinder could do so." *Id.* (citing *In re S.T.*, 127 S.W.3d 371 (Tex. App.-Beaumont 2004, no pet.)). We must disregard all evidence that a reasonable factfinder could have disbelieved or found incredible, but undisputed facts that do not support the finding cannot be disregarded. *Id.* (citing *In re S.T.*, 127 S.W.3d at 373). If any probative evidence supports the finding, we will uphold the decision. *K.T. v. State*, 68 S.W.3d 887, 890 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (citing *In re K.C.M.*, 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, *pet. denied* )).

When reviewing the factual sufficiency of the evidence, "we must give due consideration to any evidence the factfinder could reasonably have found to be clear and convincing." *Harrison*, 148 S.W.3d at 680 (citing *In re S.T.*, 127 S.W.3d at 373). "The evidence is factually insufficient if, in light of the entire record, the disputed evidence that does not support the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" as to the truth of its finding. *Id.* (citing *In re S.T.*, 127 S.W.3d at 373).

### Standard of Proof

Section 4(d)(5) of article 46.03 [2](2) provides that a person acquitted by reason of insanity and committed to a mental hospital or other appropriate facility ... may only be discharged in accordance with the procedures specified therein and charges the trial court with determining whether the acquitted person continues to meet the criteria for involuntary commitment. Section 4(d)(2) [3] (3) provides that criteria is found in the Texas Mental Health Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.031–.037 (Vernon 2003 & Supp.2005). As noted in *Campbell v. State*, 118 S.W.3d 788, 793 (Tex.App.-Houston [14th Dist.] 2003, pet. denied), "The court can only recommit appellant if it finds that he meets one of the criteria for commitment specified in Mental Health Code section 574.035."

---

**2.** Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2644–45 (repealed 2005).

**3.** Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2643 (repealed 2005).

According to section 574.035(a), the evidence must be clear and convincing. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (Vernon Supp.2005). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction about the truth of the allegations sought to be established. *See State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "To be clear and convincing under Subsection (a), the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.035(e) (Vernon Supp.2005).

An expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient for compulsory treatment. *K.T.*, 68 S.W.3d at 892. When the evidence merely reflects that an individual is mentally ill and in need of hospitalization the statutory standard has not been met. *Id.* The expert opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. *T.G. v. State*, 7 S.W.3d 248, 252 (Tex.App.-Dallas 1999, no pet.) (citing *Mezick v. State*, 920 S.W.2d 427, 430 (Tex. App.-Houston [1st Dist.] 1996, no writ)).

Texas courts have noted several relevant factors that may be considered in determining whether a patient who has been criminally violent while insane meets the criteria for court-ordered extended mental health services. A patient's refusal to take medication is evidence that, as a whole, tends to confirm the likelihood of serious harm to the patient and others. *Roland v. State*, 989 S.W.2d 797, 802 (Tex. App.-Forth Worth 1999, no writ); *see also*

*Niswanger v. State*, 875 S.W.2d 796, 801 (Tex.App.-Waco 1994, no pet.) (holding that evidence that patient who had a history of not taking medication and who murdered husband during a period when she was off of her medication and delusional tends to confirm the likelihood of serious harm to patient or others). The original crime may also be considered as additional background information to assess whether the patient has improved or is merely repeating past behavior. *See Campbell*, 118 S.W.3d at 793–94. The original crime may also indicate the extent to which a patient can be a danger to others if he does not control his mental illness. *See id.* at 796. Evidence that a patient denies various details of the crime may also be relevant. *See id.*

### The State's Evidence

The trial court had a written report from Dr. Baker, Weller's attending physician at North Texas State Hospital, and the live testimony of Dr. Gripon, a psychiatrist in Beaumont. Both doctors were of the opinion that Weller was likely to cause harm to others. Dr. Gripon opined that Weller was also likely to cause harm to himself.

Dr. Gripon testified that Weller exhibited a "continuing pattern of thought process including evasive, guarded, oppositional, delusional and paranoid belief system." Dr. Gripon also testified that Weller does not accept responsibility for his parents' murder, he engages in anti-social behavior, he does not consider himself mentally ill, he believes that those who consider him ill are involved in a plot to deprive him of his civil rights, and he "fails to realize why he's in the North Texas State Hospital."

Dr. Gripon testified that a few months prior to the hearing, Weller took "psychoactive medication" and he "showed

some brief initial improvement on that; but that fairly shortly after beginning the medication, within ten days to two weeks, he had side effects from the medication and it was subsequently discontinued." Dr. Gripon further testified that Weller has "persistently refused to take medication" and he "is not amenable to ... tak[ing] any kind of psychoactive medication...." According to Dr. Gripon, Weller is suffering from the same mental condition that resulted in Weller's original commitment and the condition "hasn't gone away and it's not going to spontaneously [go] away on its own."

### Weller's Witness

Weller presented no controverting expert testimony. Weller testified on his on behalf. Weller testified that he participates in counseling sessions with Dr. Baker, he participates in an exercise class and a computer class, he has worked in the commissary, and he has worked in the food service department. Weller also testified that he participates in activities that require him to interact with approximately thirty patients with the supervision of one or two hospital personnel.

Weller testified that he has not had any violent episodes as a patient, has not damaged hospital property, and has not suffered from "uncontrollable rage." He indicated he has not had any problems with other patients or the staff and cooperates with treatment. Weller also explained that if he were released, he would not be a danger to himself or to others and that a review board found he "was not manifestly dangerous to [himself] or to others...." Weller assured the court that if he were released and he began experiencing mental health problems, "I'd be the first one to speak up."

On cross-examination, when the State asked Weller if he knew why the trial court ordered him to serve time in the mental hospital, Weller replied, "Are you talking about ... the original offense 18 years ago, or whatever it was?" Weller testified that he knew he was charged with two counts of murder. Weller also stated, "I knew very little about it 18 years ago. [F]or me to discuss that now ... I don't see what purpose it would serve." When the State asked Weller if he believed he was guilty of murdering his parents, Weller stated, "I still feel that someone drugged me and that my parents' deaths was [sic] a result of that."

Weller testified that he "reluctantly" took the psychoactive medication Dr. Gripon mentioned in his testimony and stated, "I had such side effects ... that it wasn't worth ... taking." Weller testified that he did not believe he needed to take any type of medication and when the State asked him if he believed he needed medication for a mental illness Weller responded, "For what?"

### Conclusion

Viewing the evidence in the light most favorable to the finding, and disregarding contrary evidence that the trial court could have reasonably disbelieved, we conclude there is clear and convincing evidence in the record from which the trial court reasonably could have formed a firm conviction that Weller continues to meet the inpatient criteria for involuntary commitment. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (Vernon Supp.2005). There is expert testimony that indicates Weller continues to suffer from the delusional disorder that resulted in his parents' murders, he refuses to take medication to treat the disorder, he does not take responsibility for his parents' murders, and he does not believe he is mentally ill. The evidence from all the experts shows Weller is likely to cause harm to others and to himself.

This evidence, taken as a whole, tends to confirm the likelihood of serious harm to Weller or others. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(e) (Vernon Supp. 2005).

Furthermore, we find the evidence factually sufficient because our review of the entire record does not convince us that the contrary evidence is so significant that the trial court could not reasonably have formed a firm belief or conviction to the truth of its finding. Issue one is overruled. The trial court's order is affirmed.

AFFIRMED.