In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-428 CR


____________________



ANDREW SAWYER WELLER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 49280






OPINION


 This is an appeal of a commitment order extending inpatient mental health services for
appellant Andrew Sawyer Weller. In a sole issue, Weller argues the evidence is legally and factually
insufficient to support the trial court's determination that he poses a danger to himself and others. 
We affirm the order.

Procedural Background


 On January 11, 1988, Weller was found not guilty of murder by reason of insanity. See
Weller v. State, No. 09-01-067-CR, 2002 WL 91004, at *1 (Tex. App.--Beaumont Jan. 23, 2002, no
pet.) (not designated for publication). Pursuant to Tex. Code Crim. Pro. Ann. art. 46.03 § 4(d), (1)
Weller was ordered committed to the North Texas State Hospital-Vernon Campus for treatment. 
See Weller, 2002 WL 91004, at *1. 

 On August 24, 2004, the State filed an application for renewal of extended court-ordered
mental health services. On September 20, 2004, the trial court held a hearing to determine whether
Weller continued to meet the criteria for involuntary commitment. The trial court found, by clear
and convincing evidence, that Weller (1) was mentally ill, (2) was likely to cause serious harm to
others, (3) would, if not treated, continue to suffer severe and abnormal mental, emotional, and
physical distress, (4) would, if not treated, continue to experience deterioration of his ability to
function independently, (5) was presently unable to make a rational and informed choice as to
whether or not to submit to treatment, and (6) was expected to continue in this condition for more
than ninety days. See Tex. Health & Safety Code Ann. § 574. 035(a) (Vernon Supp. 2005). 
Based upon these findings, the court entered a judgment committing Weller to North Texas State
Hospital-Vernon Campus for in-patient treatment for a period not to exceed one year. 

Standard of Review

 When reviewing the legal sufficiency of the evidence in a case where the burden of proof
at trial was by clear and convincing evidence, we consider all the evidence in the light most
favorable to the finding. Harrison v. State, 148 S.W.3d 678, 680 (Tex. App.--Beaumont 2004, no
pet.). "We must assume the factfinder resolved disputed facts in favor of the finding, if a reasonable
factfinder could do so." Id. (citing In re S.T., 127 S.W.3d 373 (Tex. App.--Beaumont 2004, no
pet.)). We must disregard all evidence that a reasonable factfinder could have disbelieved or found
incredible, but undisputed facts that do not support the finding cannot be disregarded. Id. (citing In
re S.T., 127 S.W.3d at 373). If any probative evidence supports the finding, we will uphold the
decision. K.T. v. State, 68 S.W.3d 887, 890 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (citing
In re K.C.M., 4 S.W.3d 392, 395 (Tex. App.--Houston [1st Dist.] 1999, pet. denied)).

 When reviewing the factual sufficiency of the evidence, "we must give due consideration
to any evidence the factfinder could reasonably have found to be clear and convincing." Harrison,
148 S.W.3d at 680 (citing In re S.T., 127 S.W.3d at 373). "The evidence is factually insufficient if,
in light of the entire record, the disputed evidence that does not support the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction" as to the truth of its
finding. Id. (citing In re S.T., 127 S. W.3d at 373).

Standard of Proof

 Section 4(d)(5) of article 46.03 (2) provides that a person acquitted by reason of insanity and
committed to a mental hospital or other appropriate facility . . . may only be discharged in
accordance with the procedures specified therein and charges the trial court with determining
whether the acquitted person continues to meet the criteria for involuntary commitment. Section
4(d)(2) (3) provides that criteria is found in the Texas Mental Health Code. See Tex. Health &
Safety Code Ann. §§ 574.031-.037 (Vernon 2003 & Supp. 2005). As noted in Campbell v. State,
118 S.W.3d 788, 793 (Tex. App.--Houston [14th Dist.] 2003, pet. denied), "The court can only
recommit appellant if it finds that he meets one of the criteria for commitment specified in Mental
Health Code section 574.035." 

 According to section 574.035(a), the evidence must be clear and convincing. See Tex.
Health & Safety Code Ann. § 574.035(a) (Vernon Supp. 2005). Clear and convincing evidence
is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or
conviction about the truth of the allegations sought to be established. See State v. Addington, 588
S.W.2d 569, 570 (Tex. 1979). "To be clear and convincing under Subsection (a), the evidence must
include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that
tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the
proposed patient's distress and the deterioration of the proposed patient's ability to function." Tex.
Health & Safety Code Ann. § 574.035(e) (Vernon Supp. 2005).

 An expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient
for compulsory treatment. K.T., 68 S.W.3d at 892. When the evidence merely reflects that an
individual is mentally ill and in need of hospitalization the statutory standard has not been met. Id. 
The expert opinions and recommendations must be supported by a showing of the factual bases on
which they are grounded. T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.--Dallas 1999, no pet.) (citing
Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.-Houston [1st Dist.] 1996, no writ)).

 Texas courts have noted several relevant factors that may be considered in determining
whether a patient who has been criminally violent while insane meets the criteria for court-ordered
extended mental health services. A patient's refusal to take medication is evidence that, as a whole,
tends to confirm the likelihood of serious harm to the patient and others. Roland v. State, 989
S.W.2d 797, 802 (Tex. App.--Forth Worth 1999, no writ); see also Niswanger v. State, 875 S.W.2d
796, 801 (Tex. App.--Waco 1994, no pet.) (holding that evidence that patient who had a history of
not taking medication and who murdered husband during a period when she was off of her
medication and delusional tends to confirm the likelihood of serious harm to patient or others). The
original crime may also be considered as additional background information to assess whether the
patient has improved or is merely repeating past behavior. See Campbell, 118 S.W.3d at 793-94. 
The original crime may also indicate the extent to which a patient can be a danger to others if he
does not control his mental illness. See id. at 796. Evidence that a patient denies various details of
the crime may also be relevant. See id.

The State's Evidence


 The trial court had a written report from Dr. Baker, Weller's attending physician at North
Texas State Hospital, and the live testimony of Dr. Gripon, a psychiatrist in Beaumont. Both doctors
were of the opinion that Weller was likely to cause harm to others. Dr. Gripon opined that Weller
was also likely to cause harm to himself. 

 Dr. Gripon testified that Weller exhibited a "continuing pattern of thought process including
evasive, guarded, oppositional, delusional and paranoid belief system." Dr. Gripon also testified
that Weller does not accept responsibility for his parents' murder, he engages in anti-social behavior,
he does not consider himself mentally ill, he believes that those who consider him ill are involved
in a plot to deprive him of his civil rights, and he "fails to realize why he's in the North Texas State
Hospital." 

 Dr. Gripon testified that a few months prior to the hearing, Weller took "psychoactive
medication" and he "showed some brief initial improvement on that; but that fairly shortly after
beginning the medication, within ten days to two weeks, he had side effects from the medication and
it was subsequently discontinued." Dr. Gripon further testified that Weller has "persistently refused
to take medication" and he "is not amenable to . . . tak[ing] any kind of psychoactive medication.
. . ." According to Dr. Gripon, Weller is suffering from the same mental condition that resulted in
Weller's original commitment and the condition "hasn't gone away and it's not going to
spontaneously [go] away on its own." 

Weller's Witness


 Weller presented no controverting expert testimony. Weller testified on his on behalf. 
Weller testified that he participates in counseling sessions with Dr. Baker, he participates in an
exercise class and a computer class, he has worked in the commissary, and he has worked in the food
service department. Weller also testified that he participates in activities that require him to interact
with approximately thirty patients with the supervision of one or two hospital personnel. 

 Weller testified that he has not had any violent episodes as a patient, has not damaged
hospital property, and has not suffered from "uncontrollable rage." He indicated he has not had any
problems with other patients or the staff and cooperates with treatment. Weller also explained that
if he were released, he would not be a danger to himself or to others and that a review board found
he "was not manifestly dangerous to [himself] or to others. . . ." Weller assured the court that if he
were released and he began experiencing mental health problems, "I'd be the first one to speak up." 
 On cross-examination, when the State asked Weller if he knew why the trial court ordered
him to serve time in the mental hospital, Weller replied, "Are you talking about . . . the original
offense 18 years ago, or whatever it was?" Weller testified that he knew he was charged with two
counts of murder. Weller also stated, "I knew very little about it 18 years ago. [F]or me to discuss
that now . . . I don't see what purpose it would serve." When the State asked Weller if he believed
he was guilty of murdering his parents, Weller stated, "I still feel that someone drugged me and that
my parents' deaths was [sic] a result of that." 

 Weller testified that he "reluctantly" took the psychoactive medication Dr. Gripon mentioned
in his testimony and stated, "I had such side effects . . . that it wasn't worth . . . taking." Weller
testified that he did not believe he needed to take any type of medication and when the State asked
him if he believed he needed medication for a mental illness Weller responded, "For what?" 

Conclusion

 Viewing the evidence in the light most favorable to the finding, and disregarding contrary
evidence that the trial court could have reasonably disbelieved, we conclude there is clear and
convincing evidence in the record from which the trial court reasonably could have formed a firm
conviction that Weller continues to meet the inpatient criteria for involuntary commitment. See Tex.
Health & Safety Code Ann. § 574.035(a) (Vernon Supp. 2005). There is expert testimony that
indicates Weller continues to suffer from the delusional disorder that resulted in his parents'
murders, he refuses to take medication to treat the disorder, he does not take responsibility for his
parents' murders, and he does not believe he is mentally ill. The evidence from all the experts
shows Weller is likely to cause harm to others and to himself. This evidence, taken as a whole,
tends to confirm the likelihood of serious harm to Weller or others. See Tex. Health & Safety
Code Ann. § 574.035(e) (Vernon Supp. 2005). 

 Furthermore, we find the evidence factually sufficient because our review of the entire record
does not convince us that the contrary evidence is so significant that the trial court could not
reasonably have formed a firm belief or conviction to the truth of its finding. Issue one is overruled. 
The trial court's order is affirmed.

 AFFIRMED.

 ______________________________

 CHARLES KREGER

 Justice


Submitted on November 21, 2005

January 11, 2006

Publish


Before Gaultney, Kreger, and Horton, JJ.
1. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2643-47, repealed by Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 1, 2005 Tex. Gen. Laws 2841,
2841 (current version at Tex. Code Crim. Proc. Ann. art. 46C.001-46C-270 (Vernon Supp.
2005)). The 2005 amendment states that it "applies only to an offense committed on or after the
effective date of this Act. An offense committed before the effective date of this Act is covered
by the law in effect when the offense was committed, and the former law is continued in effect
for that purpose." Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 5, 2005 Tex. Gen. Laws
2841, 2853-54. 
2. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2644-45
(repealed 2005).
3. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2643
(repealed 2005).