In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-060 CV


____________________



ANDREW SAWYER WELLER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause Nos. 49280 and 49361






OPINION


 This is an appeal of a commitment order extending inpatient mental health services
for appellant Andrew Sawyer Weller. In separate issues, Weller argues the evidence is
legally and factually insufficient to support the trial court's determination that he continues
to meet the criteria for court ordered inpatient mental health services. We affirm the order.

PROCEDURAL BACKGROUND


 On January 11, 1988, Weller was found not guilty of murder by reason of insanity. 
See Weller v. State, No. 09-01-067-CR, 2002 WL 91004, at *1 (Tex. App.--Beaumont Jan.
23, 2002, no pet.) (not designated for publication). Pursuant to Tex. Code Crim. Proc. Ann.
art. 46.03 § 4(d), (1) Weller was ordered committed to the North Texas State Hospital-Vernon
Campus for treatment. See Weller, 2002 WL 91004, at *1. Since that time, Weller has
annually been involuntarily civilly committed to either North Texas State, Rusk or Kerrville
State Hospitals for inpatient mental health services.

 The State filed an application for renewal of extended court-ordered mental health
services. After a jury trial, the jury found, by clear and convincing evidence, that Weller (1)
was mentally ill, (2) was likely to cause serious harm to himself, (3) was likely to cause
serious harm to others, (4) would, if not treated, continue to suffer severe and abnormal
mental, emotional, and physical distress, (5) would, if not treated, continue to experience
deterioration of his ability to function independently, (6) was presently unable to make a
rational and informed choice as to whether or not to submit to treatment, and (7) was
expected to continue in this condition for more than ninety days. See Tex. Health &
Safety Code Ann. § 574.035(a) (Vernon Supp. 2008). Based upon these findings, the court
entered a judgment committing Weller to Rusk State Hospital for in-patient treatment for a
period not to exceed one year.

STANDARD OF REVIEW

 When reviewing the legal sufficiency of the evidence in a case where the burden of
proof at trial was by clear and convincing evidence, we consider all the evidence in the light
most favorable to the finding. Harrison v. State, 148 S.W.3d 678, 680 (Tex. App.--Beaumont 2004, no pet.). "We must assume the factfinder resolved disputed facts in favor
of the finding, if a reasonable factfinder could do so." Id. (citing In re S.T., 127 S.W.3d 371,
373 (Tex. App.--Beaumont 2004, no pet.)). We must disregard all evidence that a reasonable
factfinder could have disbelieved or found incredible, but undisputed facts that do not
support the finding cannot be disregarded. Id. (citing In re S.T., 127 S.W.3d at 373). If any
probative evidence supports the finding, we will uphold the decision. K.T. v. State, 68
S.W.3d 887, 890 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (citing In re K.C.M., 4
S.W.3d 392, 395 (Tex. App.--Houston [1st Dist.] 1999, pet. denied)).

 When reviewing the factual sufficiency of the evidence, "we must give due
consideration to any evidence the factfinder could reasonably have found to be clear and
convincing." Harrison, 148 S.W.3d at 680 (citing In re S.T., 127 S.W.3d at 373). "The
evidence is factually insufficient if, in light of the entire record, the disputed evidence that
does not support the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction" as to the truth of its finding. Id. (citing In re S.T., 127
S.W.3d at 373).

STANDARD OF PROOF

 Section 4(d)(5) of article 46.03 (2) provides that a person acquitted by reason of insanity
and committed to a mental hospital or other appropriate facility may only be discharged in
accordance with the procedures specified therein and charges the trial court with determining
whether the acquitted person continues to meet the criteria for involuntary commitment.
Section 4(d)(2) (3) provides that criteria is found in the Texas Mental Health Code. See Tex.
Health & Safety Code Ann. §§ 574.031-.037 (Vernon 2003 & Supp. 2008). As noted in
Campbell v. State, 118 S.W.3d 788, 793 (Tex. App.--Houston [14th Dist.] 2003, pet. denied),
"The court can only recommit appellant if it finds that he meets one of the criteria for
commitment specified in Mental Health Code section 574.035." 

 According to section 574.035(a), the evidence must be clear and convincing. See
Tex. Health & Safety Code Ann. § 574.035(a). Clear and convincing evidence is that
measure or degree of proof that will produce in the mind of the trier of fact a firm belief or
conviction about the truth of the allegations sought to be established. See State v. Addington,
588 S.W.2d 569, 570 (Tex. 1979). 

 An expert diagnosis of mental illness, standing alone, is not sufficient to confine a
patient for compulsory treatment. K.T., 68 S.W.3d at 892. When the evidence merely
reflects that an individual is mentally ill and in need of hospitalization the statutory standard
has not been met. Id. The expert opinions and recommendations must be supported by a
showing of the factual bases on which they are grounded. T.G. v. State, 7 S.W.3d 248, 252
(Tex. App.--Dallas 1999, no pet.) (citing Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.--Houston [1st Dist.] 1996, no writ)).

 Texas courts have noted several relevant factors that may be considered in
determining whether a patient who has been criminally violent while insane meets the criteria
for court-ordered extended mental health services. A patient's refusal to take medication is
evidence that, as a whole, tends to confirm the likelihood of serious harm to the patient and
others. Roland v. State, 989 S.W.2d 797, 802 (Tex. App.--Forth Worth 1999, no writ); see
also Niswanger v. State, 875 S.W.2d 796, 801 (Tex. App.--Waco 1994, no pet.) (holding that
evidence that patient who had a history of not taking medication and who murdered husband
during a period when she was off of her medication and delusional tends to confirm the
likelihood of serious harm to patient or others). The original crime may also be considered
as additional background information to assess whether the patient has improved or is merely
repeating past behavior. See Campbell, 118 S.W.3d at 793-94. The original crime may also
indicate the extent to which a patient can be a danger to others if he does not control his
mental illness. See id. at 796. Evidence that a patient denies various details of the crime may
also be relevant. See id.

THE STATE'S EVIDENCE


 Dr. Edward Gripon, a psychiatrist, was the only witness to testify before the jury for 
the State. The State submitted the "Physician's Certificate of Medical Examination for
Mental Illness" of Dr. Edward Gripon and Dr. G.E. Groves, M.D., though such certificates
were not admitted into evidence. Weller did not testify nor did he offer any expert testimony
other than through cross-examination of Dr. Gripon. Dr. Gripon had initially seen Weller
before the slaying incident and evaluated Weller after Weller had killed his parents. Dr.
Gripon has examined Weller fifteen or sixteen times over the past twenty years. While
Weller refused to be seen by Dr. Gripon or otherwise talk with him prior to the most recent
re-commitment hearing, Dr. Gripon reviewed the records and reports of Weller's treatment,
including but not limited to the past year, and including those of Dr. Satyajeet Lahiri, M.D.,
one of Weller's more recent treating physicians. (4) Dr. Gripon testified, without objection, that
Dr. Lahiri included in his records that Weller has been observed as being suspicious,
guarded, hypervigilant and having a tendency to avoid discussing details of the slaying
incident of which he was charged. The doctor testified that Weller continues to show no
remorse for the shotgun slaying of his parents. Dr. Gripon further testified that though no
overt delusions or hallucinations had been verbalized by Weller over the past year, clinically
he continued to exhibit features of paranoid psychosis. 

 Based on these records and from his own past evaluations of Weller, Dr. Gripon
testified that Weller continues to be mentally ill and suffers from a delusional disorder. Dr.
Gripon further explained that his diagnosis of a delusional disorder continues to be based,
in part, on Weller's failure to recognize that he is mentally ill, his continued refusal to
undergo treatment in the form of psychoactive medication, his complete lack of
understanding as to why he is in the hospital, and his continued delusions regarding efforts
to treat his condition. The doctor explained that treating a delusional disorder in an adult in
mid-life, even with medication, can be very difficult, and the goals are somewhat limited and
can be unsuccessful with some patients. Dr. Gripon opined that if Weller is not treated, he
will continue to suffer severe and abnormal mental, emotional, or mental distress and his
ability to function independently will continue to deteriorate. 

 Dr. Gripon testified that Weller is likely to cause harm to himself or to others. The
doctor explained that Weller would be a danger to himself or others, and his condition would
deteriorate, if he were released or placed in a less restrictive setting. The doctor noted that
even though Weller continues to refuse any treatment and has more or less vegetated in the
hospital setting over the past year, Weller substantially benefits from the structure of residing
in Rusk State Hospital. While there have been periods of time when he's had exacerbations,
or worsening, of his symptoms, overall his condition has remained fairly constant in the
structured setting of the hospital. Dr. Gripon explained though, that if Weller were released
into any setting less structured than Rusk State Hospital, Weller's condition would worsen,
making him a danger to others. In December of 2007, the hospital, over Weller's objections,
sought and obtained permission from a court to begin treating Weller involuntarily with
antipsychotic medication. However, at the time of trial, insufficient time had passed for Dr.
Gripon to form an opinion as to any benefit Weller may have received from the involuntary
treatment. 

 Although Weller had not engaged in any overt acts of aggression or violence over the
last year, in light of his past violent behavior toward his parents, the doctor explained that
Weller's continued refusal to take psychotropic medication and other medication for
diagnosed medical conditions, his continued lack of cooperation in accepting treatment for
his mental illness, his continued complete lack of insight that he is mentally ill, his
unwillingness to talk about the circumstances which necessitates him being confined in the
State hospital is evidence that Weller would commit serious harm to others if he was
released. It was Dr. Gripon's opinion that when faced with a choice of either being
compliant with his treatment or not, Weller's choice to refuse voluntary treatment is an overt
act that would also act to confirm his conclusion. Weller did display continuing paranoia,
delusional thoughts, and a refusal to take medication. Dr. Gripon noted that Weller's medical
condition implies the potential for danger. The doctor testified that Weller demonstrated a
continuing pattern of behavior that tends to confirm a likelihood of serious harm to himself
and others by refusing to accept his mental illness and his otherwise lack of insight of the
mental illness, by refusing to take psychoactive medication, and by requiring the structured
environment as provided by the hospital. Dr. Gripon testified that Weller is unable to make
rational and informed decisions as to whether he should submit to treatment, and Weller's
condition is expected to continue for more than ninety days. The doctor opined that Weller
should be readmitted to Rusk State Hospital. 

 Viewing the evidence in the light most favorable to the finding, and disregarding
contrary evidence that the fact finder could have reasonably disbelieved, we conclude there
is clear and convincing evidence in the record from which the jury reasonably could have
formed a firm conviction that Weller continues to meet the inpatient criteria for involuntary
commitment. See Tex. Health & Safety Code Ann. § 574.035(a). Considering the clear
and convincing evidence, the trial court did not err in ordering continued inpatient treatment.
Issue one is overruled.

 We find the evidence factually sufficient because our review of the entire record does
not convince us that the contrary evidence is so significant that the jury could not reasonably
have formed a firm belief or conviction to the truth of its finding. Upon cross-examination
of Dr. Gripon, Weller elicited testimony regarding information contained within certain
records reviewed by Dr. Gripon in preparation for his testimony, viz: a psychiatric evaluation
prepared by a W. David Todd, assessing clinician. Dr. Gripon confirmed that Dr. Todd's
evaluation of Weller, conducted in October, 2007, upon Weller's arrival at Rusk State
Hospital that year, contained the notation that Dr. Todd did not consider Weller to be
dangerous at that point in time. On re-direct examination, however, Dr. Gripon confirms that
Dr. Todd's psychiatric evaluation also reported that Weller continued to refuse all
psychotropic medications, and would not take his thyroid and blood pressure medications as
prescribed but only when Weller perceived some need for them. For Dr. Gripon, that
information only confirms his own medical opinion that Weller completely lacks insight into
his mental illness and continues to refuse to accept responsibility for the murder of his
parents in 1986. It was then pointed out to the jury that in his evaluation, Dr. Todd appeared
to concur with Dr. Gripon's diagnosis of Weller as suffering from delusional disorder from
Todd's notation that, "[o]ne might speculate that he still has delusions which are well
[concealed.]" We find that the testimony surrounding Dr. Todd's written psychiatric
evaluation of Weller, taken as a whole, was not of a nature that a reasonable trier of fact
could not have reconciled any conflicting evidence in favor of its ultimate findings. Issue
two is overruled. The trial court's order is affirmed. 

 AFFIRMED.


 _______________________________

 CHARLES KREGER

 Justice

Submitted on August 8, 2008

Opinion Delivered December 11, 2008

Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640,
2643-47, repealed by Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 1, 2005 Tex. Gen.
Laws 2841, 2841 (current version at Tex. Code Crim. Proc. Ann. arts. 46C.001-.270
(Vernon 2006)). The 2005 amendment states that it "applies only to an offense committed
on or after the effective date of this Act. An offense committed before the effective date of
this Act is covered by the law in effect when the offense was committed, and the former law
is continued in effect for that purpose." Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 5,
2005 Tex. Gen. Laws 2841, 2853-54. 
2. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640,
2644-46 (repealed 2005).
3. Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2643
(repealed 2005).
4. While Dr. Gripon testified with regard to observations contained in Weller's medical
records, no reports or records were introduced into evidence before the jury.