In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-550 CR


 ______________________


 

ANDREW SAWYER WELLER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Court Nos. 49280 and 49361






MEMORANDUM OPINION


 This is an appeal of a commitment order. In two appellate issues, Andrew Sawyer
Weller asserts the evidence is legally and factually insufficient to support the trial court's
determination that he continues to meet the criteria for court-ordered inpatient mental health
services. We affirm the trial court's order.

 Weller was found not guilty of murder by reason of insanity on January 11, 1988. See
Weller v. State, 184 S.W.3d 787, 788 (Tex. App.--Beaumont 2006, no pet.). Weller was
committed for treatment. Id.; see also Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3,
1983 Tex. Gen. Laws 2640, 2643-47 (repealed 2005) (current version at Tex. Code Crim.
Proc. Ann. art. 46C.261 (Vernon 2006)). (1) Weller is currently committed to Kerrville State
Hospital.

 The State filed an application for renewal of extended court-ordered mental health
services. The trial court held a hearing and found, by clear and convincing evidence, that
Weller (1) is mentally ill; (2) is likely to cause serious harm to others; (3) will, if not treated,
continue to suffer severe abnormal, mental, emotional, and physical distress; (4) will, if not
treated, continue to experience deterioration of his ability to function independently; (5) is
presently unable to make a rational and informed choice as to whether or not to submit to
treatment; and (6) is expected to continue in this condition for more than ninety days. The
court entered a judgment committing Weller to Kerrville State Hospital for inpatient
treatment. 

 Section 4(d)(5) of article 46.03 provides that a person acquitted by reason of insanity
and committed to a mental hospital or other appropriate facility may only be discharged by
an order of the committing court, and charges the trial court with determining whether the
acquitted person continues to meet the criteria for involuntary commitment. Act of May 25,
1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2644-45 (repealed 2005). 
See also Tex. Health & Safety Code Ann. §§ 574.031-.037 (Vernon 2003 & Supp. 2007). 
The evidence to support the trial court's findings must be clear and convincing. See
Harrison v. State, 239 S.W.3d 368, 373 (Tex. App.--Beaumont 2007, no pet.). Clear and
convincing evidence is that measure or degree of proof that will produce in the mind of the
trier of fact a firm belief or conviction about the truth of the allegations sought to be
established. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). 

 In a legal sufficiency review where the burden of proof is clear and convincing
evidence, the reviewing court must consider all the evidence in the light most favorable to
the finding to determine whether a reasonable trier of fact could have formed a firm belief
or conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The
reviewing court assumes the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so. Id. 

 In a factual sufficiency review, the reviewing court considers all the evidence, both
in support of and contrary to the trial court's findings. See In re C.H., 89 S.W.3d 17, 27-29
(Tex. 2002). The court gives due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. See id. at 25. The appellate court must
determine whether the evidence is such that a factfinder could reasonably form a firm belief
or conviction about the truth of the State's allegations. Id. The court considers whether
disputed evidence is such that a reasonable trier of fact could not have reconciled that
disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. The appellate court
retains deference for the role of the factfinder. In re C.H., 89 S.W.3d at 26. 

 Dr. Edward Gripon, a psychiatrist, evaluated Weller after Weller killed his parents. 
Dr. Gripon has examined Weller over the past twenty years. The doctor testified that Weller
is mentally ill and suffers from a delusional disorder. Dr. Gripon explained that his diagnosis
of delusional disorder is based on Weller's failure to accept that he is mentally ill, Weller's
refusal to undergo treatment in the form of psychoactive medication, his lack of
understanding as to why he is in the hospital, and his delusions regarding the commitment
hearings. Dr. Gripon opined that if Weller is not treated, he will continue to suffer severe
and abnormal mental, emotional, or physical distress and his ability to function independently
will continue to deteriorate. 

 Dr. Gripon testified that Weller is likely to cause harm to himself or to others. The
doctor explained that Weller would be a danger to himself, and his condition would
deteriorate, if he were released or placed in a less restrictive setting. Dr. Gripon noted that
Weller substantially benefits from the structure of residing in Kerrville State Hospital, and
Weller does not receive any active treatments. Dr. Gripon also explained that if Weller were
released into anything less structured than Kerrville State Hospital, Weller's condition would
worsen, making him a danger to others. The doctor acknowledged that Weller had been
attacked by another patient and he did not retaliate or act out in violence. Dr. Gripon
explained that there was still a risk that Weller's delusional thought process could focus on
another individual as it did in the original offense. The doctor framed the issue as whether
Weller would be violent in that type of setting, and not whether Weller would "go out and
start a fight."

 The doctor explained that although Weller had not demonstrated a recent overt act that
would confirm a likelihood of serious harm to himself or others, Weller did display
continuing paranoia, delusional thoughts, and a refusal to take medication. Dr. Gripon noted
that Weller's medical condition implies the potential for danger. The doctor testified that
Weller demonstrated a continuing pattern of behavior that tends to confirm a likelihood of
serious harm to himself and others by refusing to accept his mental illness, by refusing to
take psychoactive medication, and by requiring the structure provided by the hospital. Dr.
Gripon testified that Weller is unable to make rational and informed decisions as to whether
he should submit to treatment, and Weller's condition is expected to continue for more than
ninety days. The doctor opined that Weller should be readmitted to Kerrville State Hospital. 
 The State submitted the "Physician's Certificate of Medical Examination for Mental
Illness" of Dr. Heather Fannin and Dr. Robert Stevenson of Kerrville State Hospital. Weller
was under Dr. Fannin's care for ten months. Dr. Fannin diagnosed Weller with a delusional
disorder. The doctor opined that Weller is mentally ill; he will, if not treated, continue to
suffer severe and abnormal mental, emotional, or physical distress; Weller will continue to
experience substantial mental or physical deterioration of the ability to function
independently; and Weller is not able to make a rational and informed decision as to whether
to submit to treatment. Dr. Fannin based her opinion on Weller's consistent refusal to take
medications, his guardedness, his mildly paranoid distortions of thoughts, and his illogical
thinking. The doctor also noted that it was unlikely that Weller would take medication or
follow the conditions imposed by outpatient commitment. Dr. Fannin stated that Weller's
condition is expected to continue for more than ninety days because Weller's condition
would not improve substantially without medication. 

 Dr. Stevenson performed a psychiatric evaluation on Weller and diagnosed him with
paranoid schizophrenia. Dr. Stevenson opined that Weller was mentally ill; is likely to cause
serious harm to himself or to others; and if not treated, Weller will continue to suffer severe
and abnormal mental, emotional, or physical distress; will continue to experience substantial
mental or physical deterioration of the ability to function independently; and Weller is not
able to make a rational and informed decision as to whether to submit to treatment. Dr.
Stevenson noted that Weller displayed general distrust and paranoia. The doctor stated that
Weller had no insight or understanding as to the need for psychiatric treatment. Dr.
Stevenson also noted that Weller was argumentative, irritable, and refused to consider
alternative anti-psychotic medications. The doctor opined that Weller's condition was
expected to continue for more than ninety days because Weller continued to display difficulty
despite receiving years of treatment and hospitalization. 

 The State also submitted a detailed, seven page "Violence Risk Assessment"
performed by Jeffrey M. Lammers, a psychiatrist. Lammers opined that Weller required
continued inpatient psychiatric treatment because Weller suffers from a mental illness,
Weller displays significant risk factors associated with risk of harm to others, and Weller is
unlikely to benefit from outpatient treatment. 

 Weller presented no controverting expert testimony. Weller testified that he did not
experience any mental problems, he has not suffered from delusions in the past, he has not
threatened to hurt himself if released, and he has made no attempts to harm himself. He
explained that he has passed review boards and the people on the boards did not think he was
a danger to himself or others. He testified that he has not engaged in any fights while
hospitalized. Weller explained that he had been attacked by another patient, and he did not
provoke his attacker. Weller testified that he has participated in activities provided by the
hospital that prepare patients to live in the community upon release. He also indicated that
to cooperate with the mental health care that he has been offered, he has made arrangements
to receive social security benefits. 

 We conclude there is clear and convincing evidence in the record from which the trial
court could reasonably have formed a firm conviction that Weller continues to meet the
inpatient criteria for involuntary commitment. Considering the clear and convincing
evidence, the trial court did not err in ordering continued inpatient treatment. 

 Issues one and two are overruled. The trial court's order is affirmed.

 AFFIRMED.

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on September 19, 2007

Opinion Delivered January 30, 2008

Do not publish


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. The Texas Legislature repealed article 46.03 in 2005 and amended the Code of
Criminal Procedure to add "Chapter 46C. Insanity Defense." Act of May 27, 2005, 79th
Leg., R.S., ch. 831, §§ 1, 2, 2005 Tex. Gen. Laws 2841. The 2005 amendment "applies only
to an offense committed on or after the effective date of this Act. An offense committed
before the effective date of this Act is covered by the law in effect when the offense was
committed, and the former law is continued in effect for that purpose." Act of May 27, 2005,
79th Leg., R.S., ch. 831, § 5, 2005 Tex. Gen. Laws 2841, 2853-54. The effective date was
September 1, 2005. Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 6, 2005 Tex. Gen. Laws
2841, 2854.