In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00292-CV**
_____

**ANDREW SAWYER WELLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause Nos. 49280, 49361**

**MEMORANDUM OPINION**

Andrew Sawyer Weller appeals a commitment order extending his inpatient

mental health services. In two appellate issues, Weller contends the evidence is

legally and factually insufficient to support the trial court's finding that services

should be continued. We affirm the trial court's commitment order.

PROCEDURAL BACKGROUND

On January 11, 1988, Andrew Weller was found not guilty of murder by

reason of insanity and commited to a mental health facility. *See Weller v. State*,

184 S.W.3d 787, 788 (Tex. App.—Beaumont 2006, no pet.); *see also* Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2643-47 (repealed 2005) (current version at Tex. Code Crim. Proc. Ann. art. 46C.256 (West 2006)).[1] Weller has been continuously committed for inpatient treatment since 1988. On May 30, 2014, the State filed an application for renewal of extended court-ordered mental health services. Attached to the State's application were (1) certificates of examination for mental illness, signed by two physicians who had examined Weller and reviewed his mental health records during the thirty days prior to the date of the application, (2) a dangerousness risk assessment, and (3) a forensic psychiatry report to the court, dated May 7, 2014.

The trial court conducted a hearing on the State's application on June 2, 2014, and on June 3, 2014, the trial court again entered an order of commitment

---

[1]The Texas Legislature repealed article 46.03 in 2005 and amended the Code of Criminal Procedure to add "Chapter 46C. Insanity Defense." Act of May 27, 2005, 79th Leg., R.S., ch. 831, §§ 1, 2, 2005 Tex. Gen. Laws 2841. The 2005 amendment "applies only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose." Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 5, 2005 Tex. Gen. Laws 2841, 2853-54. The effective date of the Act was September 1, 2005. Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 6, 2005 Tex. Gen. Laws 2841, 2854.

continuing Weller's inpatient mental health services.[2] In its order, the trial court concluded that (1) Weller is mentally ill, (2) likely to cause serious harm to himself or others as a result of his mental illness, (3) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, continue to experience deterioration of his ability to function independently, and will be unable to make a rational and informed decision regarding continuing treatment, and (4) will continue to suffer from mental illness for more than ninety days. The trial court also found "by clear and convincing evidence, that no sufficient settings for care on a less-restrictive, or out-patient, basis exist at the present time, or will become available in the foreseeable future."

## THE EVIDENCE

Weller appeared at the hearing of June 2, 2014, by telephone pursuant to his request to do so. The trial court noted that State's proposed exhibit one consisted of twelve pages, including (1) a telefax submission form from Rusk State Hospital ("Rusk"); (2) a cover letter from Dr. George Howland, the unit psychiatrist at Rusk, and Brenda Slayton, the superintendent of Rusk; (3) a dangerousness risk assessment; (4) a forensic psychiatry report to the court, signed by Howland; (5) Howland's certificate of medical examination for mental illness; and (6) a second

---

[2]Weller waived his right to have a jury determine whether he continued to meet the criteria for involuntary inpatient commitment.

certificate of medical examination for mental illness, signed by Dr. Larry Hawkins, all of which were attached to the State's application. State's exhibit one was admitted into evidence without objection.

The certificate of medical examination signed by Howland indicated that Howland examined and evaluated Weller at Rusk on May 7, 2014, and stated that Weller suffers from paranoid schizophrenia and is currently in the Hope Residential Unit at Rusk. In the certificate, Howland opined that Weller is (1) likely to cause serious harm to others and is suffering from severe and abnormal mental, emotional or physical distress; (2) experiencing substantial mental or physical ability to function independently, "which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety"; and, (3) "unable to make a rational and informed decision as to whether or not to submit to treatment." Howland further opined that Weller was refusing psychotropic medications, had been irritable, appeared to be paranoid about "court[,]" and had "no insight into his mental illness[,]" and he explained that Weller's paranoia, lack of insight, and refusal to take psychotropic medications demonstrate that Weller's condition will continue for more than ninety days.

The certificate of medical examination for mental illness signed by Hawkins indicated that Hawkins examined Weller at Rusk on May 12, 2014, and stated that Weller suffers from paranoid schizophrenia. Hawkins also determined that Weller is (1) suffering from severe and abnormal mental, emotional or physical distress; (2) experiencing substantial mental or physical inability to function independently, "which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety"; and, (3) "is unable to make a rational and informed decision as to whether or not to submit to treatment." Hawkins noted on the certificate that Weller appeared to be irritable at times, argumentative over some issues, and "continues to refuse any psychiatric medications[.]" Hawkins stated that although Weller still has some paranoid views, he behaves "fairly well" without psychiatric medications and "functions fairly well" in the hospital environment. Hawkins opined that although Weller's "[b]ehavior has responded to hospital structure[,]" Weller "would need med[ication]s in [the] community."

The dangerousness risk assessment completed by clinician Joe Colkin indicated that Weller has not been aggressive or violent since his admission to Rusk's residential program. Colkin noted that Weller killed both of his parents in 1986, and that "[r]ecords indicate that his family was considering civil

5

commitment for him prior to the murder[s]." According to Colkin, Weller "has also not had violent behaviors since he has been off of his medication." Colkin noted on the assessment as follows:

> Mr. Weller does not accept that he has a psychotic condition. This prevents him from considering realist[ic] options proposed by the psychiatrist. Also, he says he will not consider a group home setting, that his own rented space is what he needs. He understands that this position is atypical and difficult for Social Workers and MHA[]s to promote. He reasons that it is a practical plan that a judge would support.

Colkin also indicated in the assessment that Weller "states he does not believe he has a mental illness and therefore does not need psychiatric medications[;]" Weller believes his treatment for a stroke in the 1990s may have cured his psychosis; and Weller "maintains that taking medication since that time for psychosis has not been of benefit." Colkin identified as mitigating circumstances Weller's ability to function well in Rusk's residential program and Weller's likely ability to function in a "transitional outpatient setting." Colkin characterized Weller's risk for aggression as low, but noted that Weller desires to live independently in a rural setting away from Jefferson County rather than in a transitional setting in Jefferson County. Colkin concluded that Weller has demonstrated the ability to manage living in a residential setting, and Colkin "anticipated that [Weller] can manage living in an outpatient transitional living setting."

6

The forensic psychiatry report Howland provided to the court in a letter (as part of State's exhibit one) stated that Weller was charged with killing his parents, and "[a]t the time of this incident[,] it was reported that he was concerned about 'pod people.'" Howland discussed Weller's belief that he does not need psychotropic medications and noted that Weller has been off psychotropic medications for some time. Howland noted that Weller "has been more irritable lately than he usually is[,]" still feels that he does not need psychotropic medications, lacks insight into his mental illness, believes he has been cured, and "appears paranoid about the court." Howland also indicated that Weller has a job on the hospital grounds and "gets along fairly well" with his peers. Howland stated, "It is the opinion of the Hope unit recovery team that Mr. Weller is still paranoid at times. He is irritable and has no insight into his mental illness." Howland recommended that Weller be recommitted to Rusk to reside in the Hope residential unit.

Weller testified that he has been committed for approximately twenty-six years, and he has never harmed himself or anyone else during that time. Weller explained that he has been off his medication for at least four years, and he has been able to care for himself and make decisions. Weller acknowledged that he was mentally ill at one time, but stated that he is not currently mentally ill. Weller

7

testified that he has taken different medications for mental illness, but "there ha[s]n't been any real need for it. There hasn't been any psychosis or mental illness for a very long time." When asked whether he was aware that doctors are saying he is still suffering from severe and abnormal mental, emotional, or physical distress, Weller responded, "Just because they are saying that doesn't necessarily mean that it's true[,]" and he denied feeling such distress. Weller testified that, with the exception of "the stress of being locked up[,]" he has not experienced a substantial mental or physical deterioration of his ability to function independently.

Weller testified that he wakes himself each day, dresses himself, takes care of his personal hygiene, and works. Weller testified that if he were permitted to live in a less restrictive environment, he could get his own apartment, buy groceries, cook food, wash his clothes, and do whatever he needed to do without assistance. Weller explained that he could support himself with any assets or social security payments to which he might be entitled. Weller acknowledged that he has refused to take psychiatric medication despite Howland's recommendation that he do so. Weller explained that he believes the medication harms him and he does not need such medication because he has had "no signs [of] psychosis or mental illness for a very long time . . . ."

When the trial judge asked Weller whether he believes the doctors who are prescribing psychotropic medications are wrong, Weller responded,

> Sir, they are doing a lot of things at these facilities that the Court doesn't necessarily know about. There [are] a lot of homeless people here. There are a lot of crack heads here. They give them psychotropic meds and call them mental patients. That's what's happening in the State of Texas right now. I've lived it. I've been around it. I've seen it in the jails. I've seen it in these places. That's why there is overcrowding in these places. You as law officers and people that represent the law need to take a close look at what is actually happening.

When the trial judge asked Weller whether he wanted to be released to live independently at a location of his own choosing and whether he has discounted other types of outpatient facilities, Weller responded as follows:

> [W]hen a person gets their freedom, they can choose where they want to live. If the State is going to tell me that I have to live at another place, then they can pick up the tab; and that's not really my freedom. If I am released on an outpatient basis, I feel that I am capable of getting my own housing and reporting to the local MHA as required by the Court and complying with what MHA requires on an outpatient basis. I can do that.

At the conclusion of the hearing, the trial judge stated that "the Court . . . will grant the State's motion and find that this is in the best interest of justice at this time."

## ISSUES ONE AND TWO

In issue one, Weller argues the evidence is legally insufficient to support the trial court's commitment order continuing his inpatient mental services. In issue

9

two, Weller contends the evidence is factually insufficient to support the order. We address issues one and two together.

Under a legal sufficiency review when the burden of proof is "clear and convincing evidence," we "consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Harrison v. State,* 179 S.W.3d 629, 634 (Tex. App.—Beaumont 2005, pet. denied). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could. *Id*. Under a factual sufficiency review, we consider all the evidence, both in support of and contrary to the trial court's findings, and we give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. at 634-35. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. *Id*. at 635. "We consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding." *Id*.

As discussed above, before the trial court were two certificates of examination for mental illness, dangerousness risk assessment, and a forensic psychiatry report to the court. The certificates of examination both indicated that

10

Weller has paranoid schizophrenia, is suffering from severe and abnormal mental, emotional, or physical distress, is experiencing a substantial mental or physical deterioration of his ability to function independently, and is unable to make a rational and informed decision regarding whether or not to submit to treatment. Howland's certificate concluded that Weller is likely to cause serious harm to others. Both Howland and Hawkins noted that Weller was paranoid at times and refused to take psychotropic medications, and Howland stated that Weller lacked insight into his mental illness. Colkin's dangerousness risk assessment noted that Weller refuses to accept that he has a psychotic condition, refuses to consider treatment options proposed by his psychiatrist, and refuses to consider a group home setting. The forensic psychiatry report submitted by Howland noted that Weller has suffered from increased irritability, refuses to take psychotropic medication, lacks insight into his mental illness, believes that he is cured, and exhibits paranoia about the trial court, and Howland recommended that Weller be recommitted to Rusk.

Considering all the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *See id.* at 634. Therefore, the evidence was legally sufficient to support the trial court's order. In addition, considering all the

11

evidence, both in support of and contrary to the trial court's findings, and giving due consideration to evidence that the factfinder could reasonably have found to be clear and convincing, we conclude that a reasonable fact finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *See id.* at 634-35. Weller's testimony that he is not mentally ill, does not need medication, and can function independently is not so compelling that a reasonable trier of fact could not have reconciled that evidence in favor of its finding. *See id.* Accordingly, we overrule issues one and two and affirm the trial court's order of commitment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice


Submitted on March 16, 2015
Opinion Delivered April 9, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.

12